**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PATRICK DUNN, *et al.*, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMPLETE PAYROLL SOLUTIONS, LLC,<br><br>Defendant. | Case No. 1:25-cv-30045<br>Judge: Hon. Leo T. Sorokin |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

## I. INTRODUCTION

On February 18, 2026, this Court preliminarily approved a proposed class action settlement between Plaintiffs[1] and Defendant. The class action and resulting settlement arises from the potential unauthorized access of certain information on CPS' computer systems that was discovered on or about March 10, 2024 ("Data Incident"). The Data Incident potentially exposed sensitive Private Information of approximately 376,943 Settlement Class Members.

Plaintiffs' and Class Counsels' efforts created significant benefits for the Settlement Class, including the establishment of a $2.6 million non-reversionary Settlement Fund to compensate Settlement Class Members who submit Valid Claims for documented monetary losses and/or *pro rata* cash payments, cover Costs of Claims Administration, and pay court-approved attorneys' fees, costs and Service Awards. Additionally, the Settlement Fund will provide three years of identity monitoring services to eligible Settlement Class Members.

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement ("Agr."), filed on February 17, 2026, at ECF No. 53-2.

Throughout this Litigation, Class Counsel and other Plaintiffs' counsel have zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation and arm's-length negotiations and full-day mediation. As compensation for the substantial benefits conferred upon the Settlement Class, they respectfully move the Court for an attorneys' fees award of $866,666.67, which is one-third of the Settlement Fund and $16,611.24 for reasonable out-of-pocket expenses actually incurred. These requests are reasonable in light of the Settlement's benefits; the skill, experience, and efficiency of the counsel in achieving the Settlement; the complexity and risks of the Litigation; the time counsel devoted; awards in similar cases; public policy considerations; and because the costs incurred were necessary expended.

Plaintiffs also respectfully move for Class Representative Service Awards of $2,500.00 each to be paid from the Settlement Fund, for their work on behalf of the Settlement Class. The requested awards are reasonable.

## II. CASE SUMMARY

### A. The Data Incident

CPS is a third-party human resource, benefits, and payroll administrator. *See* Decl. of Danielle L. Perry in Supp. of Pls.' Mot. for Fees, Costs, and Service Awards ¶ 3 ("Perry Fee Decl."), filed herewith. On or around March 10, 2024, CPS became aware of suspicious activity and potential unauthorized access to its network. *Id.* The Private Information impacted includes some combination of names, addresses, Social Security numbers, driver's license numbers, financial information, and health insurance information. *Id*. This Litigation resulted from the Data Incident, alleging Defendant's failure to safeguard the Private Information it maintained on behalf of the Settlement Class. *Id*. ¶ 4. Defendant denies all liability and wrongdoing. *Id*. ¶ 5.

The Parties agreed to consolidate all cases related to the Data Incident into this Litigation

and moved to appoint Interim Co-Lead Class Counsel consisting of David Lietz, Carl Malmstrom and Danielle Perry. *Id.* ¶ 6. The Court consolidated the cases on May 16, 2025, and appointed them as Interim Co-Lead Class Counsel on June 3, 2025. ECF Nos. 15, 26, 34. On July 3, 2025, Plaintiffs filed their Consolidated Class Action Complaint. ECF No. 34. On August 8, 2025, the Parties filed a Joint Motion to Stay the case pending the outcome of mediation. ECF No. 43. The Parties sought a further extension once the mediation was scheduled. ECF No. 45.

The Settlement is a result of protracted arm's-length negotiations. Perry Fee Decl. ¶ 12. Prior to mediation, the Parties exchanged informal discovery and fully briefed relevant legal issues in their mediation statements, allowing each side to evaluate the strengths and weaknesses of the case. *Id.* ¶ 13. On December 17, 2025, after a full day of contested arm's-length negotiations before experienced class action mediator Bennett Picker, Esq. of Stradley Ronon Stevens & Young, LLP, the Parties came to a consensus on the central terms of the Settlement. *Id.* ¶ 14. Over the next few weeks, the Parties worked to negotiate the finer points of the agreement, draft the Settlement Agreement, Notices, and Claim Form, and agree to a proposed Claims Administrator. *Id.* ¶ 15. It is the opinion of Plaintiffs and Class Counsel that the settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.* ¶¶ 23–26.

Class Counsel prepared and filed the Motion for Preliminary Approval and supporting declaration, which was granted on February 18, 2026. ECF Nos. 52–54. Thereafter, Class Counsel has worked with Defendant and the Claims Administrator to implement the Notice Program and perform the Claims Administration. Perry Fees Decl. ¶ 17. As of May 4, 2026, the Claims Administrator reports that only one individual has requested exclusion, and zero have objected. *Id.* ¶ 18. The Claims Administrator will provide a declaration for the Court's review on or before May 26, 2026, detailing the notice and claims administration process.

**B. Settlement Class**

The Settlement Class is defined as: all persons who were sent a Notice of Data Breach Letter from Defendant concerning the Data Incident discovered by Defendant on or around March 10, 2024 or otherwise determined to have potentially had their personal information impacted by the Data Incident. Agr. ¶ 28. It excludes: (1) Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns; (2) any judge, justice, or judicial officer presiding over this matter and members of their immediate families and their judicial staff; and (3) any member of the Settlement Class that opts-out of the Settlement. *Id.* ¶¶ 28, 58.

**C. Settlement Consideration**

The Settlement Fund of $2,600,000 shall be used to pay, in the following order: (1) all Settlement Administration Costs; (2) any Service Awards awarded to Class Representative; (3) any attorneys' fees and litigation expenses awarded to Class Counsel; and (4) Settlement Class Member Benefits to those Settlement Class Members who submit a Valid Claim. Agr. ¶ 38.

Settlement Class Members may make a claim for documented monetary losses up to $5,000 and/or a *pro rata* cash payment estimated to be $100.00. Agr. ¶¶ 41, 42. Reimbursable losses may include, but are not limited to: (i) out of pocket credit monitoring costs that were incurred on or after March 10, 2024, through the Claims Deadline; (ii) unreimbursed losses associated with actual fraud or identity theft; and (iii) unreimbursed bank fees, long distance phone charges, postage, or mileage at the prevailing IRS business use mileage rate for the year incurred for local travel. *Id.* ¶ 41. To be valid, documented monetary losses must be supported by reasonable documentation such as telephone records, correspondence including emails, or receipts. *Id.*

In addition to cash payments, Settlement Class Members may also make a claim for Credit

Monitoring that will include three years of one-bureau Credit Monitoring that will provide the following benefits: one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000.00, and fully managed identity recovery services. *Id.* ¶ 43.

Defendant also agreed to Business Practices Changes. *Id.* ¶ 45. CPS has adopted, paid for, implemented, and will maintain certain business practice changes related to information security to safeguard personal information on its systems. *Id.* Prior to the Final Fairness Hearing, CPS will detail these business practice changes to Class Counsel in a confidential declaration that will be submitted to the Court for in camera review upon request. *Id.*

### D. Releases

The releases negotiated are tailored to claims related to the Data Incident. *See* Agr. ¶¶ 24–25, 63–65. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all Released Claims, including Unknown Claims, against Defendant and the other Released Parties. *Id.*

### E. Notice Program and Claims Process

In its Preliminary Approval Order, the Court appointed Kroll Settlement Administration LLC as the Claims Administrator, who shall administer various aspects of the Settlement under the Parties' supervision. ECF No. 54 at ¶ 11; Agr. ¶¶ 3, 46. Defendant delivered the Class List to Kroll. Agr. ¶ 55. The Notice Program has been initiated, and Plaintiff's Motion for Final Approval will detail the Notice results to the Court.

The Claims Process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms, compile documents supporting their Claim if needed, submit Claims, and decide whether to opt out or object. *See* Perry MPA Decl. ¶ 36. Settlement Class Members will have up to 90-days from the Notice Deadline to submit a Claim Form for benefits.

Agr. ¶ 4. The Claim Form is in plain language for easy completion. *See id.*, Ex. A. There is a robust process to review Claim Forms for completeness, validity, and to prevent fraud and abuse, giving claimants the opportunity to supplement their claims with additional information to cure any deficiencies and a process to resolve disputes over claim validity. *Id.* ¶¶ 49–50.

### F. Service Awards, Attorneys' Fees, and Costs

After agreeing to the Settlement's material terms, Class Counsel negotiated attorneys' fees, costs and Service Awards. Perry Fee Decl. ¶ 16.

Consistent with the Agreement and the Notices to the Settlement Class, Class Counsel seek an attorneys' fees award of one-third of the Settlement Fund ($866,666.67) plus reimbursement of $16,611.24 for reasonable out-of-pocket expenses. *Id*. ¶ 67; Perry Fee Decl. ¶ 27. The Agreement also calls for a reasonable Service Award for each of the Class Representatives of $2,500.00 each, meant to compensate them for their efforts on the Settlement Class's behalf. Agr. ¶ 68; Perry Fee Decl. ¶ 27.

Any award of attorneys' fees, costs, and expenses, and the Service Awards to Plaintiffs, are to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. *Id*. ¶ 70. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or Service Awards to Class Counsel or Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement. *Id.*

## III. ARGUMENT

### A. An Award of One-Third of the Settlement Fund Is Reasonable

It is well settled that attorneys whose efforts achieve a benefit for class members are entitled to "attorneys' fees and reimbursement of expenses prior to the distribution of the balance

to the class." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 245 (D. Mass. 2022) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Rule 23 also permits courts to award "reasonable attorney's fees and nontaxable costs . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The goal is "to compensate plaintiffs' counsel fairly for the labor provided, taking into account the risks they faced during the representation." *Ranbaxy*, 630 F. Supp. 3d at 245. District courts have broad discretion to award fees. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

The First Circuit follows the common fund doctrine. "Under the 'common fund doctrine,' attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing*, 444 U.S. at 478); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("Attorneys in a certified class action may be awarded reasonable fees and costs."). "The First Circuit has acknowledged the 'distinct advantages' of the [percentage of the fund] method, explaining that it is less burdensome, enhances efficiency and better approximates the marketplace dynamics." *Ranbaxy*, 630 F. Supp. 3d at 245 (quoting *In re Thirteen Appeals*, 56 F.3d at 307). *See also Carlson v. Target Enter.*, 447 F. Supp. 3d 1, 3 (D. Mass Mar. 23, 2020) (same); *In re Solodyn Antitrust Litig.*, No. 1:14-md-2503 (WC), 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (same).

"The [percentage of the fund] method is preferred in common fund cases because 'it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Cabletron Sys.*, 239 F.R.D. at 37 (citation omitted). Further, that method stems from the Court's inherent equitable powers by awarding fees and costs payable (or measured) from the fund created for the benefit of the class so the court can spread the cost of litigation

proportionately among those who will benefit from the fund. *See Boeing*, 444 U.S. at 478.

Class Counsel's requested one-third of the Settlement Fund is within the range of fee requests that have been approved in this judicial district. *See, e.g.*, *Luna v. Carbonite, Inc.*, No. 1:19-cv-11662-LTS, 2024 WL 6470281, at *1–2 (D. Mass. May 15, 2024) (Sorokin, J.) (awarding one-third of settlement fund as "is fair, reasonable, and appropriate under the "percentage-of-recovery" method); *Meaden v. Harborone Bank*, No. 1:23-cv-10467-AK (D. Mass. Nov. 14, 2023) ("33.33% of the Settlement Fund is fair and reasonable in light of the nature of this case"); *In re Emmanuel Coll. Data Sec. Incident*, No. 1:24-CV019314-AK (D. Mass. July 29, 2025), ECF No. 46 (same); *In re Sovos Compliance Data Sec. Incident Litig.*, No. 1:23-cv-12100 (D. Mass. July 23, 2024), ECF No. 51 (same); *Fiorentino v. Flosports, Inc.*, No. 1:22-cv-11502 (D. Mass. Mar. 5, 2024) (same); *Ranbaxy*, 630 F. Supp. 3d at 245 (collecting cases).

In the Preliminary Approval Order, the Court already observed that Class Counsel intend to seek up to one-third of the Settlement Fund, and that amount appeared reasonable to the Court. ECF No. 54 at ¶ 8. The arguments that follow support that preliminary assessment.

### B. Class Counsel's Expertise and Effort, the Risks of the Case, and the Achieved Result Support the Attorneys' Fee Request

The First Circuit has yet to establish a specific set of factors for district courts to consider when assessing applications for attorneys' fees in class actions. Instead, district courts have broad discretion to consider a wide variety of factors. A survey of fee awards by courts within the First Circuit reveal the following factors are typically considered when assessing fee requests: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin*, 58 F. Supp. 3d at 170 (citation omitted); *see*

*also In re Lupron Mktg. & Sales Pracs. Litig.*, MDL No. 19-md-02878-NMG, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). Applying these factors, Class Counsel's fee request is reasonable and justified.

***1. Size of the Settlement Fund and Number of Settlement Class Members Benefited***

With any class action settlement, the results obtained for the settlement class is the most important factor. *Hensley v. Eckerhart*, 461 U.S. 422, 436 (1983) ("the most critical factor is the degree of success obtained"). As described *supra*, the Settlement provides substantial Settlement Class relief for 376,943 individuals. Defendant has agreed to establish a $2.6 million Settlement Fund, which will be used to provide a variety of Settlement Class benefits: (1) a cash payment for reimbursement for documented losses of up to $5,000; (2) a *pro-rata* cash payment estimated to be $100.00; and (3) three years of one-bureau Credit Monitoring that will provide the following benefits: one-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000.00, and fully managed identity recovery services. These benefits are comparable to, and in some cases superior to, those provided by other data breach settlements finally approved in this judicial district. *See, e.g.*, *In re Emmanuel Coll. Data Sec. Incident*, No. 1:24-CV019314-AK (D. Mass. July 8, 2025), ECF No. 42 (finally approved settlement offering reimbursement for documented out-of-pocket losses up to $5,000 incurred as a result of the Data Security Incident; (2) a pro-rata cash payment of up to $350; and (3) the opportunity to claim two years of credit monitoring and identity-theft insurance protections.)*; Webb v. Injured Workers Pharmacy, LLC*, No. 1:22-cv-10797-RGS (D. Mass. Jan. 2, 2025), ECF No. 60 (finally approved settlement with (1) up to $5,000 in compensation for economic losses; (2) *pro rata* cash payments; and (3) two years of credit monitoring).

The Settlement benefits also equate to $6.90 per Settlement Class Member, a number

comparable to or in excess of results achieved in many other recent data breach settlements. *See, e.g.*, *Webb*, *supra* (approving settlement relief equating to $8.11 per class member); *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. June 6, 2025) (approving requested one-third fee award with settlement relief equating to $3.29 per class member); *In re Sovos Compliance*, No. 1:23-cv-12100 (D. Mass. July 23, 2024), ECF No. 51 (approving requested one-third fee award with settlement relief equating to $7.14 per class member). This outcome can only be described as a success, and entirely consistent with outcomes in other data breach settlements. Thus, the fact that Class Counsel was able to achieve such an outcome weighs heavily in favor of approving the requested award.

***2. Settlement Class Counsel's Skill, Expertise, and Efficiency***

In evaluating the skill and efficiency of class counsel, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek*, 79 F. Supp. 3d at 348. The skill required to litigate data breach cases is great, in part due to the quickly evolving nature of data breach and privacy law. *See Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result.").

As the Court found when appointing them Interim Co-Lead Class Counsel, and then Class Counsel for the Settlement Class in the Preliminary Approval Order, Class Counsel have decades of collective experience in class actions generally, with extensive experience and previous appointments as class counsel in many data breach and privacy class actions. *See* ECF Nos. 17–18 (attaching firm resumes to support Interim Co-Lead Counsel appointments), 26 (appointing Interim Co-Lead Counsel), 52–54 (seeking and appointing Class Counsel). Class Counsel have an

established track record and experience in litigating data breach claims. The significant experience and qualifications of counsel easily support the requested fee.

When looking at the quality of Class Counsel's representation, courts typically find the absence or near absence of objections from the class to the attorneys' fees request supports the reasonableness of those fees. *See Bezdek*, 79 F. Supp. 3d at 347 (observing the "overwhelmingly positive" reaction of the class, which yielded only 23 opt-outs and 3 objections); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."). As of May 1, 2026, there have been no objections to the Settlement. Perry Fee Decl. ¶ 22. With only one exclusion request and no objections to date, the reaction of the Settlement Class thus far strongly suggests their support for the Settlement and the proposed attorneys' fee award.

***3. Complexity and Duration of the Litigation***

Even though Class Counsel is confident Plaintiffs would prevail at trial, as discussed above, they anticipated facing several challenges in prosecuting this Litigation, which factored into negotiating the valuable Settlement. Perry Fee Decl. ¶ 23. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles even just to make it past the pleading stage. "Data breach" actions "are particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019). "Beyond the novel state of the law in regards to identity theft, there are inherent issues of causation" that would have resulted in protracted and uncertain litigation. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010); *Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMx), 2018 WL 11358228,

at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement and finding in part that "[b]ecause of the difficulty of proving damages and causation, Plaintiffs faced a substantial risk of losing at summary judgment or at trial."); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) ("[E]stablishing causation . . . has been a barrier to consumer plaintiffs' success" in data breach litigation); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD- 2633-SI, 2019 WL 3410382, at *21 (D. Or. July 29, 2019) (granting preliminary approval, recognizing "Plaintiffs have a weaker case with respect to damages . . . and the number of Class Members who appear to have suffered actual identity theft or out-of-pocket damages that can reasonably be attributed to the Data Breach appears to be relatively low."). Thus, absent this Settlement, Plaintiffs would have faced "a significant element of risk." *In re Lupron*, 228 F.R.D. at 97.

If the case did not settle, the Parties would likely engage in extensive pre-trial motion practice followed by complex and technical discovery, utilizing experts, which depletes resources from both Parties, as well as this Court. *Id.* ¶ 23. The Litigation's complexity is not diminished by Class Counsel's ability to achieve a prompt and efficient settlement. By reaching this favorable Settlement before dispositive motions or trial, Plaintiffs and Settlement Class Members avoid significant expense and delay, and instead ensure a fair recovery. *See Herb v. Homesite Grp. Inc.*, No. 1:22-CV-11416-JEK, 2024 WL 3593918, at *3 (D. Mass. July 31, 2024) ("the settlement avoids the costs, risks, uncertainties, and delays associated with continued litigation"). Accordingly, the novelty and complex nature of data breach class action cases supports the requested attorneys' fee award to reasonably compensate Class Counsel.

***4. The Litigation Risks Support the Requested Attorneys' Fee Award***

The uncertain nature of contingent attorneys' fees requires counsel to assume more risk

than in cases where compensation is based on billable hours. The risk in prosecuting a data breach class action is an important consideration in determining an appropriate attorneys' fee award and recognizes that contingent fee cases entail risk of non-payment for the attorneys who prosecute them. This factor also embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *See In re Lupron*, 2005 WL 2006833, at *4 ("Many cases recognize that the risk assumed by an attorney is perhaps the foremost' factor in determining an appropriate fee award."); *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1380 (N.D. Ga. Mar. 20, 2019) ("a contingency fee arrangement often justifies an increase in the award of attorney's fees").

Class Counsel and other Plaintiffs' counsel undertook this Litigation on a purely contingent basis, with no assurance of recovery of costs or compensation for their time, assuming significant risk of nonpayment or underpayment. Perry Fee Decl. ¶ 29. Further, the attorneys involved forewent the ability to devote time to other cases and advanced their own funds to prosecute the Litigation, all at the substantial risk it would yield no (or very little) recovery and leave them uncompensated for their time and out-of-pocket costs. *Id.* Despite that risk, they remained steadfast and represented Plaintiffs and the Settlement Class on contingency. The investment of substantial time, effort, and resources into this risky and uncertain Litigation with no guarantee or promise of return on their investment warrants an appropriate fee.

Here, while Plaintiffs believed they could prevail on their claims, they were also aware they face several strong legal defenses and difficulties in demonstrating causation and injury. *Id.* ¶ 23. Such defenses, if successful, could drastically decrease or eliminate any recovery. Plaintiffs would also need to prevail on a class-wide basis after a motion to dismiss, motion for summary judgment, and/or *Daubert* motions on damages methodologies, among other motions. *Id.* Further,

given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. *Id.*

The general litigation risks are heightened in the data breach arena. Data breach cases are inherently complex, with novel issues and rapidly evolving laws posing substantial hurdles even at the pleading stage. *See, e.g.*, *Gordon*, 2019 WL 6972701, at *1 ("Data breach cases . . . are particularly risky, expensive and complex" due at least in part to the cutting-edge, innovative nature of data breach litigation and the rapidly evolving law); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped. It would present the parties and the Court with novel questions of law.").

Thus, data breach cases like this one generally face substantial class certification hurdles. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification for lack of predominance); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification). Maintaining class certification is often an equally challenging hurdle. *See e.g.*, *Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. Aug. 18, 2023) (decertifying classes).

The path to a class-wide monetary judgment remains unpaved, particularly as to damages. *See, e.g.*, *S. Indep. Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *21 (M.D. Ala. Mar. 13, 2019) (class certification denied where individualized damages questions work against predominance). Indeed, the damages methodologies, while theoretically sound in Plaintiffs' view, remain largely untested in disputed class certification settings and unproven in front of a jury. *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx), 2022 WL 18278431, at *28 (C.D. Cal. Nov. 21, 2022) (explaining that in data breach class actions damages methodologies are

largely untested and have yet to be presented to a jury).

Class Counsel took on these risks knowing full well their efforts may not bear fruit. Their willingness to take on this Litigation in the face of such risk deserves to be rewarded.

***5. Class Counsel's and Additional Plaintiffs' Counsel Devoted Extensive Time***

Class Counsel and additional Plaintiffs' counsel devoted extensive time prosecuting the claims efficiently and effectively to ensure the best possible outcome for the Settlement Class could be achieved. Perry Decl. ¶ 34. Though the Court need not perform a lodestar analysis even as a crosscheck,[2] Class Counsel offer the combined lodestar for Class Counsel and additional Plaintiffs' counsel here is $376,500.00, reflecting approximately 325 hours of combined attorney and paralegal time invested in the Litigation thus far. Perry Fee Decl. ¶¶ 35–36.[3] This time includes investigating and drafting the initial complaints in the related actions; consolidating the actions; drafting the motion to appoint interim class counsel; drafting the consolidated amended complaint; drafting and conducting informal discovery; drafting a detailed mediation statement; preparing for and attending mediation; negotiating a complex Settlement Agreement, including the Notices and Claim Form; successfully moving for preliminary approval; and working in concert with the Claims Administrator to implement and monitor the Notice Program and Claims Process. *Id.* ¶ 35.

Currently, if approved by the Court, the one-third of the Settlement Fund requested results

---

[2] Although not required, courts within the First Circuit have utilized the "lodestar calculation as a pragmatic cross-check" for percentage-based fee awards. *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, No. 05–11148–PBS, 2009 WL 3418628, at *1 (D. Mass. Oct. 20, 2009) (internal citation omitted); *In re Thirteen Appeals*, 56 F.3d at 307. As a cross-check, "the lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method." *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 652 (E.D. La. 2010). "The lodestar cross-check is used to assess the reasonableness of the percentage method, and district courts need not review actual billing records and are free to rely on time summaries submitted by attorneys." *In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 365 F. Supp. 3d 685, 701 (S.D.W. Va. 2019).

[3] For a lodestar cross-check, the court multiplies the number of hours reasonably spent by a reasonable hourly rate. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 (D. Mass. 2005). "Reasonable fees are to be calculated according to the prevailing market rates in the relevant community." *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 209 (D. Mass. 2020).

in a multiplier of approximately 2.3. *Id.* ¶ 38. In this judicial district, lodestar multipliers allowed by the court are generally between one and 2.7, but much higher multipliers have also been approved. *Ranbaxy*, 630 F. Supp. 3d at 246 ("[t]he typical range of the lodestar multiplier allowed by this Court is between one and 2.7."); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (approving attorneys' fees that would constitute a lodestar multiplier of 8.9); *New England Carpenters*, 2009 WL 2408560, at *2 (approving 8.3 lodestar multiplier). Therefore, the lodestar cross-check confirms the reasonableness of Class Counsel's request. Moreover, additional time will be spent going forward preparing the Motion for Final Approval, preparing for and appearing at the Final Approval Hearing, overseeing the final weeks of the Notice Program and Claims Process, and handling all post-Settlement approval issues. Perry Fee Decl. ¶ 38. Given prior experience, Class Counsel estimate an additional 25–50 hours will be invested. *Id.* Factoring in that additional time further decreases the multiplier.

The hourly rates charged are well within the acceptable range for class action litigators in general and are in line with or less than hourly rates approved in other complex data breach class action litigation and in this District. *Id.* ¶ 37. *See, e.g.*, *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090-WGY, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) (finding hourly rates for attorneys nationally have increased since 2020; approving $1,370 for attorneys with at least 25 years of experience; $1,165 for attorneys with 15–24 years of experience; $840 for attorneys with 5–14 years of experience; $635 for attorneys with 0–4 years of experience; and $425 for paralegals and law clerks). Ultimately, this Court should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case" and find the lodestar is reasonable and supports an appropriate valuation of the time spent. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012,

1024 (C.D. Cal. Dec. 26, 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel.").

***6. The Fee Request Is Comparable to Awards in Similar Cases***

As demonstrated *supra* in § III.A, the requested one-third of the Settlement Fund is well within the range of reasonable attorneys' fees previously awarded in similar cases in the First Circuit and in this District in class actions involving non-reversionary all cash settlement funds. *See, e.g.*, *Ford*, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) (awarding one-third); *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me. June 6, 2025) (awarding one-third in a data breach action); *Webb v. Injured Workers Pharmacy*, No. 1:22-cv-10797-RGS (D. Mass. Jan. 16, 2025), ECF 61 (same); *In re Sovos Compliance Data Sec. Incident Litig.*, No. 1:23-cv-12100 (D. Mass. July 23, 2024), ECF No. 51 (same); *Kondo v. Creative Servs., Inc.*, No. 1:22-cv-10438-DJC (D. Mass. Sept. 7, 2023), ECF No. 39 (same).

***7. Public Policy Considerations Support the Requested Attorneys' Fee***

The requested attorneys' fee supports public policy considerations. There is a "significant societal interest in obtaining redress" and in holding defendants accountable through class action litigation. *In re Lupron*, 2005 WL 2006833, at *6. Indeed, lawsuits that curtail violative conduct on a widespread basis provide a valuable service in safeguarding "the welfare of the general public." *In re Neurontin Mktg.*, 58 F. Supp. 3d at 171. Class actions such as this Litigation are vital to motivate entities that handle sensitive information, such as Defendant, to improve their security practices and *prevent* data breaches, an epidemic in recent years. For example, the Identity Theft Resource Center reported 3,158 total data breaches in 2024, including five "mega-breaches" involving at least 100 million individuals, with an astonishing 1,350,835,988 total data breach

notices sent out.[4] This is just 47 breaches short of 2023's record-breaking 3,205 events involving 353,027,892 victims.[5] Furthermore, both 2024 and 2025 doubled the number of compromises in 2022, which had 1,802 total compromises involving 422,143,312 victims.[6] The actual ramifications from these data breaches have been just as severe, with one in four data breach victims eventually becoming victims of identity theft. Demonstrating this fact, in 2023, the Federal Trade Commission received over 1 million identity theft complaints and 2.6 million related fraud complaints, resulting in total losses exceeding $10 billion.[7]

These data breaches show no sign of slowing and one-in-four of the 1,350,835,988 instances in 2024 in which information was compromised will eventually metastasize as a costly identity theft incident for an unfortunate citizen. The class settlement reimbursements handlers of private information are required to pay to victims necessarily incentive them to harden, strengthen, and otherwise improve their systems against the ever-rising tide.

Realistically, class actions are the only way for individual citizens to vindicate their right to safeguard and protect their private information. Given the relatively small and difficult-to-quantify amounts of individual damages, pursuing individual claims would have been economically and judicially inefficient. Without class actions, victims would simply see no recovery. *See Mazola v. May Dep't Stores Co.*, No. 97-CV-10872-NG, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) (class actions "give[] voice to relatively small claimants who may not be

---

[4] *2024 Data Breach Report*, Identity Theft Resource Center (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.

[5] *2023 Data Breach Report*, Identity Theft Resource Center (Jan. 2023), available at https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[6] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (Jan. 25, 2023), available at https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report.

[7] Jim Akin, *U.S. Fraud and Identity Theft Losses Topped $10 Billion in 2023*, Experian (July 25, 2024), https://www.experian.com/blogs/ask-experian/identity-theft-statistics.

aware of statutory violations or have an avenue to relief . . . the only way in which to make such actions economically feasible is to award [attorneys' fees.]").

For all the above reasons, the Court should find the requested attorneys' fees reasonable.

### C. The Request for Reimbursement of Costs and Expenses Is Reasonable

The requested reimbursement of necessary costs and expenses is reasonable. "In addition to attorneys' fees, lawyers who recover a common fund for a class are entitled to reimbursement of out-of-pocket expenses incurred during litigation." *Latorraca v. Centennial Techs. Inc.*, 834 F. Supp. 2d 25, 28 (D. Mass. 2011) (citing *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999). *See also Hill v. State St. Corp.*, No. 09-12146-GAO, 2015 WL 127728, at *20 (D. Mass. Jan. 8, 2015) (citation omitted) (same). Due to the early stage of litigation at which Plaintiffs were able to reach settlement, the litigation costs are relatively low. Perry Fee Decl. at ¶¶ 39–40. Class Counsels' current costs are $16,611.24, and include filing fees, mediation fees, and costs of admission pro hac vice to practice before this Court. *Id.* All of these costs and expenses are of the type commonly reimbursable. *See, e.g.*, *Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (approving expenses for mediation, travel, filing fees, and postage); *In re Wilmington Tr. Sec. Litig.*, No. 10-cv-0990-ER, 2018 WL 6046452, at *10 (D. Del. Nov. 19, 2018) (approving expenses for document management, expert fees, computerized research, photocopying, transcripts, postage, travel, and discovery).

### D. The Requested Service Awards for the Class Representatives Are Reasonable

The Court should also approve Service Awards of $2,500.00 for each of the Class Representatives. The Service Awards compensate them for their efforts on behalf of the Settlement Class, including maintaining regular contact with counsel, assisting in the investigation of the Litigation by producing relevant documents and participating in interviews, reviewing the

pleadings, being prepared to assist with discovery, remaining available for consultation throughout settlement negotiations, answering counsel's many questions, and reviewing the Settlement Agreement. Perry Fee Decl. ¶ 41. "Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek*, 79 F. Supp. 3d at 352 (approving award of $2,500 service awards for each representative plaintiff).[8] *See also In re Emmanuel Coll. Data Sec. Incident*, No. 1:24-CV019314-AK (D. Mass. July 29, 2025) (approving $2,500 service awards); *Sasoon v. Postmates, Inc.*, No. 17-11397-JCB, 2020 WL 8092224, at *4 (D. Mass. May 15, 2020) (same); *Bazerman v. Am. Airlines, Inc.*, No. 1:17-CV-11297-WGY, 2019 WL 13217437, at *3 (D. Mass. Apr. 8, 2019) (same); *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75 (D. Mass. 2005) (same).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request the Court approve an award of $866,666.67 for attorneys' fees, reimbursement of $16,611.24 for reasonable and necessary litigation costs and expenses, and Service Awards in the amount of $2,500 for each Class Representative. The proposed Final Approval Order attached as Exhibit E to the Settlement Agreement contains provisions to address the relief requested in this Motion.

---

[8] *See also* MANUAL FOR COMPLEX LITIGATION § 21.62, at n.971 (4th ed. 2004).

Dated: May 5, 2026

Respectfully submitted,

*/s/ Danielle L. Perry*

Danielle L. Perry*
**MASON & Perry LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
dperry@masonllp.com

Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

David K. Lietz*
**MILBERG PLLC**
5335 Wisconsin Ave., NW, Suite 440
Washington, DC 20015
Tel: 866.252.0878
dlietz@milberg.com

*Interim Co-Lead Counsel for Plaintiffs*

**Pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

*/s/ Danielle L. Perry*
Danielle L. Perry*