**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PATRICK DUNN, *et al.*, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMPLETE PAYROLL SOLUTIONS, LLC,<br><br>Defendant. | Case No. 1:25-cv-30045<br><br>Judge: Hon. Leo T. Sorokin |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

On February 18, 2026, the Court preliminarily approved the Settlement between Plaintiffs Patrick Dunn, Patricia Brown, Eric Marcial, Sokankelly Lim, Patrick Nowak, Carolyn Strycharz, and James Connors ("Plaintiffs"), individually and on behalf of all others similarly situated, and Defendant Complete Payroll Solutions, LLC's ("Defendant" or "CPS"), and ordered that notice be given to the Class. Doc. No. 54.[1] The Settlement establishes a non-reversionary $2,600,000.00 Settlement Fund from which substantial and immediate benefits will be provided to the Settlement Class, consisting of 342,678[2] Settlement Class Members. Settlement Class Members may claim: (1) reimbursement for documented out-of-pocket losses up to $5,000 incurred as a result of the Data Security Incident; (2) a *pro-rata* cash payment; and (3) the opportunity to claim three years

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement (Doc. No. 53-2). Citations to the Settlement Agreement will be abbreviated as "Agr., ¶ ___."

[2] After deduplication and preparing the Notice, the Settlement Administrator determined that there were only 342,678 Settlement Class Members, which is less than the 376,943 referenced in Plaintiffs Motion for Preliminary Approval.

of credit monitoring and identity-theft insurance protections.

The Parties reached this Settlement—providing meaningful benefits for the Settlement Class—after extensive investigation, hard-fought litigation, and arm's-length negotiations (including a formal mediation). Although Plaintiffs and Class Counsel believe in the merits of their claims, Defendant denies each and all of the claims and contentions alleged against it in the Litigation, including all charges of wrongdoing or liability. The claims involve the intricacies of data security litigation (a fast-developing area in the law), and Plaintiffs would face risks at each stage of litigation. Against these risks, Class Counsel and Plaintiffs believe that the Settlement achieved is for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—disseminated Notice to the Settlement Class. Individual Notice was provided directly to the Settlement Class Members via U.S. Mail, and successfully reached 94.65% of the Class. *See* Declaration of Tara Trapani of Kroll Settlement Administration LLC ("Kroll Decl."), attached hereto as Exhibit 1, ¶ 13. Out of the 342,678 Settlement Class Members, ***only three*** Class Members have sought to be excluded from the Settlement, and ***no*** Class Member has objected to the Settlement. Kroll Decl., ¶ 18.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to, and hereby incorporate, Plaintiffs' Memorandum of Law in Support of the Unopposed Motion for Preliminary Approval ("Preliminary Approval Motion") (Doc. No. 53) and Plaintiffs' Memorandum of Law in Support of Motion for Attorneys' Fees, Expenses, and Service Awards ("Motion for Fees") (Doc. No. 61).

## III. SUMMARY OF THE SETTLEMENT

The Court provisionally certified a Settlement Class defined as: "all persons who were sent a notice from Defendant regarding potential impact from the Data Incident discovered by Defendant on or around March 10, 2024 or otherwise determined to have potentially had their personal information impacted by the Data Incident." Agr. ¶ 27; PA Order ¶ 1.[3] The Settlement Class consists of 342,678 individuals, as reported to Plaintiff (*see infra*).

CPS agreed to provide a non-reversionary Settlement Fund of $2,600,000, which pays for: (i) notice and administrative expenses; (ii) service awards to class representatives as approved by the Court; (iii) any attorneys' fees and litigation expenses awarded; (iv) reimbursements for Documented Monetary Losses up to $5,000 per Class Member; (v) a *pro rata* cash payment, and (vi) credit monitoring. *See* Agr. ¶¶ 40-44. Defendant also agreed to business practice changes. *Id.* ¶ 45. The Parties further agreed that Class Counsel will seek attorneys' fees in an amount not to exceed one-third of the Settlement Fund, plus reimbursement of reasonable litigation expenses, and for service awards in the amount of $2,500 for each Plaintiff. *Id*. ¶¶ 67-68.

## IV. NOTICE AND ADMINISTRATION

### A. Class List

Defendant provided Kroll a data file containing 376,152 names and addresses. Kroll Decl. ¶ 5. Kroll reviewed the Settlement Class List ("Class List"), and cleaned up and removed 33,474 duplicate records, resulting in a final Class List of 342,678 unique records. *Id.*

### B. CAFA Notice

At Defendant's Counsel's direction, on February 27, 2026, Kroll provided notice of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. §1715(b) ("the CAFA

---

[3] Specific exclusions from the Class are delineated in the Settlement Agreement. *Id.*

Notice") via first-class certified mail, to (a) the Attorney General of the United States, (b) the fifty-three (53) state and territorial Attorneys General identified in the service list for the CAFA Notice, as well as (c) via email to the three (3) state Attorneys General. *Id.* ¶ 4, Ex. B.

### C. Direct Mail Notice

To ensure that Short Notices would be deliverable to Settlement Class Members, Kroll ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id.* On March 20, 2026, Kroll caused the mailing of 342,678 Short Notices via first-class mail. *See* Kroll Decl., ¶ 9, Exs. C, D, and E. Kroll ran undeliverable records through an advanced address search, re-mailed Short Notices to updated addresses obtained from the advanced address search, and will continue to trace and re-mail Short Notices up to the Claims Deadline. *Id.* ¶ 12. Kroll estimates that direct notice reached 94.65% of the Settlement Class. *Id.* ¶ 13.

### D. Post Office Box, Toll-Free Number, Settlement Website, and Press Release

On February 19, 2026, Kroll designated a post office box in order to receive requests for exclusion, claim forms, objections, and correspondence from Settlement Class Members. *Id.* ¶ 6. On February 23, 2026, Kroll established a toll-free telephone number for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system and/or by being connected to a live operator. *Id.* ¶ 7. As of May 4, 2026, the IVR system received 560 calls, five of which were connected to a live operator. *Id.*

On March 2, 2026, Kroll created a dedicated Settlement Website entitled www.CPSSettlement.com. *Id.* ¶ 8. The Settlement Website "went live" on March 20, 2026, and contains a summary of the Settlement, important dates and deadlines, contact information for the Claims Administrator, answers to frequently asked questions, downloadable copies of relevant documents, and allows Settlement Class Members to file a Claim Form online. *Id.*

On March 20, 2026, Kroll caused a press release to be issued over PR Newswire's US1 National Newsline, which included syndication via AP News. *Id.* ¶ 10.

**E. Requests for Exclusion, Objections, and Claims**

Settlement Class Members had until May 19, 2026 to object to or opt out from the Settlement. *Id.* ¶ 17. Kroll has received three timely opt-out requests and no objections to the Settlement. *Id*. ¶ 18, Ex. G. As of May 26, 2026, Kroll has received 11,399 Claim Forms through the mail and 13,747 Claim Forms filed electronically through the Settlement Website, for a total of 25,146 claims received. *Id.* ¶ 15. Kroll is still receiving, reviewing and validating Claim Forms. *Id*. Settlement Class Members have until June 18, 2026 to make a claim. *Id.* ¶ 14.

## V. THE SETTLEMENT WARRANTS FINAL APPROVAL

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *See* Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Roberts v. TJX Companies, Inc*., No. 13-CV-13142-ADB, 2016 WL 8677312, at *5 (D. Mass. Sept. 30, 2016) (Rule 23 class actions may be settled only with a finding that the settlement is "fair, reasonable, and adequate."). "In the First Circuit, this requires a wide-ranging review of the overall reasonableness of the settlement that relies on neither a fixed checklist of factors nor any specific litmus test." *In re Tyco Int'l Ltd. Multidistrict Litig*., 535 F.Supp.2d 249, 259 (D.N.H. 2007); *see also New Eng. Carpenters Health Benefits Fund v. First Databank, Inc*., 602 F. Supp. 2d 277, 280 (D. Mass. 2009) ("The First Circuit has not established a fixed test for evaluating the fairness of a settlement.").

The First Circuit maintains a strong policy favoring settlements, especially in class actions. *See In re Pharm. Indus. Average Wholesale Price Litig*., 588 F.3d 24, 36 (1st Cir. 2009); *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985) (commenting on the "overriding public interest in favor of the voluntary settlement of disputes, particularly where class actions are involved."); *Hill v.*

*State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *6 (D. Mass. Jan. 8, 2015); ("The determination of whether a settlement is fair, reasonable and adequate should be evaluated within the context of the public policy favoring settlement.") (citation modified); *see also P.R. Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014) (noting the "strong public policy in favor of settlements").

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Additionally, while the First Circuit has not developed a definitive list of factors to consider when evaluating the fairness of a class action settlement, courts in this Circuit frequently employ the Second Circuit's *Grinnell* factors or some version of it. *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass. 2015), *aff'd,* 809 F.3d 78 (1st Cir. 2015). These factors are as follows:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*New Eng. Carpenters Health Benefits Fund*, 602 F. Supp. 2d, at 280–81 (quoting *City of Detroit*

*v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974)). "The necessary assessment is, thus, holistic and incorporates a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) (internal citations omitted). "Notwithstanding the responsibility of the district court to carefully assess the settlement, there is a presumption in its favor so long as parties engaged in arms-length negotiations after meaningful discovery." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 244-45 (D. Mass. 2022) (citing *In re Tyco Int'l*, 535 F. Supp. 2d at 259). The Settlement meets these considerations.

**A. The Settlement Satisfies All of the Rule 23(e)(2) Factors**

**1. The Class Was Adequately Represented**

The adequacy requirement is met where 1) "the interests of the representative party will not conflict with the interests of the class members" and 2) "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 391 (D. Mass. 2011) (internal citations omitted). Here, the Class Representatives have the same interests as all other Settlement Class Members, as they are asserting the same claims and share the same alleged injuries. Further, the Court has already recognized Class Counsel's experience and qualifications in appointing them to lead this litigation, and the record shows Class Counsel worked diligently to litigate and ultimately bring this case to resolution. *See* Order Granting Prelim. App., Doc. No. 54; *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

**2. The Settlement Was Negotiated at Arm's Length**

The negotiations in this matter occurred at arm's length. Settlements reached by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate and reasonable. *See Leonardo's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.*, 544 U.S. 1044, 125 S. Ct. 2277, 161 L.Ed.2d 1080 (2005) ("'[P]resumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

The Settlement here is the product of extensive arm's-length negotiations conducted by experienced counsel and a well-respected mediator, all of whom are knowledgeable in complex data breach class actions. The Settlement reflects the progress of months of negotiations, the preparation and review of pre-mediation materials, and the review of relevant informal discovery. The Parties were only able to reach the Settlement after a full-day mediation session with, Bennett Picker, Esq., who has considerable experience mediating data breach class settlements. During the mediation and in the subsequent settlement discussions, the Parties engaged in aggressive negotiations to reach agreement on the final terms.

Class Counsel have considerable experience in handling data breach class actions and are clearly capable of assessing the strengths and weaknesses of a case. The experience of the attorneys involved demonstrate that the Settlement Class Members were well represented at the bargaining table. Indeed, it is Class Counsel's opinion that the relief provided is a superior result. Accordingly, as another judge of this Court held, "[w]hen the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given

significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000).

### 3. The Relief Is Adequate Under Rule 23(e)(2)(C)

The relief offered to Class Members in the proposed Settlement addresses the types of repercussions and injuries arising from the Data Incident and is more than adequate under the factors outlined in Rule 23(e)(2)(C). Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

#### *i. The Costs, Risk, and Delay of Trial and Appeal*

As outlined in the Preliminary Approval Motion and Motion for Fees, Plaintiffs and the Class would have faced significant risks and costs if they had continued to litigate the case. Data breach" actions "are particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019). First, there was a risk that Plaintiffs' claims would not have survived, in part or full, on a class-wide basis after ruling on a motion to dismiss, motion for class certification, motions for summary judgment, *Daubert* motions on damages methodologies, and other motions. Indeed, due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Second, if Plaintiffs survived a motion to dismiss, prevailed on a motion for class certification, successfully defeated all of CPS's other objections and motions, and proceeded to

trial, Plaintiffs would have still faced significant risk, cost, and delay, including likely interlocutory and post-judgment appeals.

The proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class compared to the risk of proceeding with litigation. It ensures that Settlement Class Members with valid claims for Documented Losses will receive compensation immediately, provides access to credit monitoring and identity theft protection services (benefits that may not have been available at trial), and provides *pro rata* cash payments. The substantial cost, risk, and delay of the trial and appeal process support a finding that the proposed Settlement is adequate. *Bezdek*, 79 F. Supp. 3d at 345.

***ii. The Method of Distributing Relief Is Effective***

The Notice to the Settlement Class was efficient and effective. The available relief is detailed clearly in the Notice, which was provided to all Settlement Class Members, laying out the benefits to which they are entitled. The Notice Program included dissemination of individual notices by direct mail. This direct mail and email notice reached 94.65% of the Class. *See* Kroll Decl. ¶ 13. Therefore, Settlement Class Members received effective and efficient notice of the relief offered. Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief is efficient and effective, and the proposed Settlement is adequate under this factor.

***iii. The Terms Relating to Attorneys' Fees Are Reasonable***

Class Counsel has requested $866,666.67 in attorneys' fees, one-third the amount of the Settlement Fund. This request is on par with awards routinely granted by courts in similar cases and is supported by a lodestar crosscheck, as laid out in the previously filed Mem. in Supp. of Attorneys' Fee Mot. Doc. No. 61; *see also, e.g., Meaden et al. v. Harborone Bank*, Case No. 1:23-cv-10467-AK (D. Mass. Nov. 14, 2023) ("33.33% of the Settlement Fund is fair and

reasonable in light of the nature of this case"); *In re Emmanuel College Data Sec. Incident*, No. 1:24-CV019314-AK, ECF No. 46 (D. Mass. July 29, 2025) (same); *In re Sovos Compliance Data Sec. Incident Litig.*, No. 1:23-cv-12100 (ECF No. 51) (D. Mass. July 23, 2024) (same); *Fiorentino v. Flosports, Inc.*, Case No. 1:22-cv-11502 (D. Mass. March 5, 2024) (same). This factor supports approval of the proposed Settlement.

***iv. Any Agreement Required to Be Identified Under Rule 23(e)(3)***

Apart from the Settlement Agreement, there are no additional agreements between the Parties or with others made in connection with the Settlement, and Plaintiffs have no financial interest in the Settlement Administrator. This factor weighs in favor of final approval.

**4. The Proposed Settlement Treats Class Members Equitably.**

The Settlement Class Members are treated equitably because they all have similar claims arising from the same data breach, and are all treated the same under the Settlement. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members are eligible to claim the various benefits provided by the Settlement, including compensation for Documented Losses, a *pro rata* cash payment, and three (3) years of credit monitoring services. Agr. ¶¶ 40-44. CPS has also adopted, paid for, implemented, and will maintain certain business practice changes related to information security to safeguard all personal information on its systems. *Id.* ¶ 45. Thus, the Settlement does not provide preferential treatment to Plaintiffs or any segments of the proposed Settlement Class. Accordingly, the factors under Rule 23(e) support final approval.

**B. The *Grinnell* Factors Weigh in Favor of Final Approval.**

**1. The Settlement Agreement Is Favorable Given the Complexity, Expense and Likely Duration of the Litigation.**

The first *Grinnell* factor weighs heavily in favor of granting final approval. Although nearly all class actions involve a high level of risk, expense, and complexity, data breach cases are

especially so. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *12 (N.D. Cal. Aug. 17, 2018) ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."). Indeed, data breach litigation is a fast-developing field with many facets that have not been fully tested at the trial court level. Should this case proceed, it would become necessary for the Parties to engage in lengthy discovery, take time-consuming technical depositions of CPS's IT staff, and engage in motion practice related to certification and summary judgment. Given the complexity of the claims and arguments here, a trial would likely follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see real recovery, if any at all. Further, any award as the result of a trial in this case would likely be subject to appeal, which would further delay any recovery in this matter. The settlement proposed provides immediate relief to the Class in the form of a non-reversionary settlement fund. Thus, the first *Grinnell* factor weighs in favor of approving Settlement.

**2. The Reaction of the Class to the Settlement Agreement has been Favorable.**

In most class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with a settlement in which 79 out of 11,000 class members objected). But here, ***no*** Class Members have objected to any aspect of the Settlement, and ***only three*** Class Members have requested exclusion. Kroll Decl. ¶ 18. This factor therefore weighs in favor of final approval. *Compare In re Relafen Antitrust Litigation,* 231 F.R.D. 52, 72 (D. Mass. 2005) (reaction to settlement was positive with

140 opt-outs and 10 objections) with *In re Lupron Marketing Sales Practices Litig,* 228 F.R.D. 75, 96 (D. Mass. 2005) (reaction to settlement was positive with 49 opt-outs and 10 objectors); *Bezdek*., 79 F. Supp. 3d at 347 (positive reaction to settlement with 23 opt-outs and 3 objections).

Also, based upon the claims rate, the Settlement Class's reaction has been extremely positive and strongly supports final approval. The claims deadline is June 18, 2026. Kroll Decl. ¶ 14. As of May 26, 2026, a total of 25,146 claims have already been received from Settlement Class Members, amounting to a claims rate of 7.34%. Kroll Decl., ¶ 15. Class Counsel expects that claims rate to grow before the June 18, 2026 Claims Deadline. A claims rate of 7.34% at this stage compares very favorably to the claims rates in other data breach class action settlements. *See, e.g., In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) (approving data breach class settlement where the "number of claims submitted reflects a response rate of approximately 0.25%"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with a claims rate of roughly 0.23%).

**3. The Parties have Engaged in Sufficient Discovery.**

The third factor requires "that sufficient discovery be conducted to make an intelligent judgment about settlement." *Hochstadt v. Bos. Sci. Corp*., 708 F. Supp. 2d 95, 107 (D. Mass. 2010) Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Kritzer v. Safelite Solutions, LLC,* 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). This is particularly true "where plaintiffs' counsel are skilled and experienced in consumer class action litigation." *Bezdek*, 79 F. Supp. 3d at 348.

Here, Class Counsel made an informed decision regarding the appropriateness of settlement. Prior to negotiating the Settlement, Class Counsel sought and obtained informal discovery from CPS on a number of topics, including the number of individuals and types of PII potentially impacted. Further, Class Counsel conducted their own investigation into the nature of the allegations in the lead up to filing the original complaints, the Consolidated Complaint, and during the pendency of the litigation. Class Counsel thoroughly evaluated this information in their damaged analysis. Through the above process and mediation, Class Counsel came to understand the Data Incident and the issues arising from it and obtained an excellent settlement. Given their experience, Class Counsel had all the information needed to "adequately assess the[] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at *7; *see also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 58 (1st Cir. 2021) (affirming district court's final approval of class action settlement where defendant provided informal discovery and disclosures prior to mediation, and finding that the "district court thus properly concluded that the parties negotiated at arm's length and conducted sufficient discovery."). The Court should find that Class Counsel conducted sufficient fact-finding.

**4. There are Risks of Establishing Liability and Damages in this Action and Maintaining the Case Through Trial Would Be Risky Compared to Settlement.**

Class Counsel are confident in the strength of Plaintiffs' case. However, they are also pragmatic about the risks and challenges associated with prolonged litigation, including uncertainties in litigating the case through class certification, summary judgment, trial, and possible appeals.

Historically, data-breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond*, 2010 WL 2643307, at *1 (collecting cases); *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded

that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and most uncertain of all class-action litigation, making settlement the more prudent course when a reasonable one can be reached. Further, the damages methodologies, while theoretically sound in Plaintiffs' view, remain largely untested in a disputed class certification setting and unproven in front of a jury. And, as is the case in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Under the circumstances, Class Counsel determined the Settlement outweighs the risks of continued litigation, provides substantial and immediate relief without further delay, and avoids the risk of an adverse judgment at trial or on appeal. *Id.* These factors weigh in favor of settlement.

#### 5. While CPS Could Possibly Withstand a Greater Judgment, the Settlement Should Still Be Approved

Plaintiffs believe that CPS could withstand a more significant judgment than the Settlement contemplates. However, "a defendant is not required to empty its coffers before a settlement can be found adequate." *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (citation omitted). Additionally, this factor, standing alone, is not sufficient to preclude a finding that a settlement is fair, reasonable and adequate where other factors weigh in favor of approving the settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). This Court has previously held that even in cases involving defendants with "classic deep pockets" that this factor is neutral to the issue of whether the proposed settlement should be approved. *In re Relafen,* 231 F.R.D. at 73; *In re Lupron,* 228 F.R.D. at 97.

#### 6. The Proposed Settlement is Reasonable Given the Best Possible Recovery and in Light of the Attendant Risks of Further Litigation.

In evaluating a settlement agreement, the court weighs the likelihood of success on the merits against the amount and form of relief offered in the settlement. *Gulbankian v. MW Mfrs., Inc.*, No. CIV.A. 10-10392-RWZ, 2014 WL 7384075, at *3 (D. Mass. Dec. 29, 2014) (citing *Santana v. Colazo*, 714 F.2d 1172, 1175 (1st Cir. 1983); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)). While Plaintiffs are confident in their claims, proceeding to trial presents real risk. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond*, 2010 WL 2643307, at *1 (collecting cases). Even cases implicating more sensitive data have been found insufficient at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (finding that the factual allegations in the complaints were insufficient to establish standing), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing). As another court observed when approving a data breach settlement, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result. . . . [they] are particularly risky, expensive, and complex." *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

In any data breach case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g., In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). While Plaintiffs and Class Counsel believe that the Action is appropriate for class treatment, the outcome of a contested motion and future appeals are far from certain. To emphasize this point, the Court need only look at two very high-profile data breach cases: *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR (M.D. Fla.) *and In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879 (D. Md.). In both cases, plaintiffs were forced to re-litigate standing; partially lost *Daubert* motions to exclude some of their expert damages models supporting the motions; had the courts narrow the class definitions in order to grant any

certification of a class; had the courts reject class certification of some of the claims and classes; and faced numerous, very serious issues on damages calculations, predominance and causation. *See Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *13 (M.D. Fla. Apr. 14, 2021) (noting that "if it becomes obvious at any time that the calculation of damages (including accounting for multiple data breaches) will be overly burdensome or individualized, the Court has the option to decertify the class"), vacated in part and remanded *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023), *Theus v. Brinker Int'l, Inc.*, No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification on negligence claim on remand); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *24 (D. Md. May 3, 2022) (approving only the overpayment damages theory where the information necessary to calculate damages is "objective and administrative in nature" and holding if the individual inquiries metastasize to an impermissible level, the court could modify the order, create subclasses, bifurcate liability and damages or decertify the class). Moreover, even if the class was certified, there is always the risk or possibility of decertification. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023) (decertifying classes and remanding), *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023) (recertifying class on remand), *Maldini v. Marriott Int'l, Inc.*, No. 24-1064, 2025 WL 1560372, at *1 (4th Cir. June 3, 2025) (reversing certification a second time).

Given the risk and uncertainty, settlement is prudent when a reasonable agreement can be reached. The $2,600,000 Settlement Fund achieved for the Settlement Class of 342,678 members (which works out to $7.59 per class member) is a solid result. By providing a non-reversionary fund worth $7.59 per Class Member, this Settlement exceeds data breach settlements recently approved by this Court and other courts. *See, e.g.*, *Kondo et al. v. Creative Services, Inc.,* No. 1:22-

cv-10438, Doc. No. 39 (D. Mass. September 7, 2023) ($1,200,000 settlement for 164,956 class members, $7.27 per person); *In re Harvard Pilgrim Data Security Litigation*, No. 1:23-cv-11211-NMG, Doc. No. 114 (D. Mass. August 4, 2025) ($16,000,000 settlement for approximately 3,000,000 class members, $5.39 per person). Based on Class Counsel's experience in similar cases, the Settlement Fund provide ample benefits for Settlement Class Member's legitimate individual claims and for class-wide claims in the aggregate.

#### 7. The Proposed Settlement is the Result of Informed, Non-Collusive, Arm's Length Negotiations Between the Parties

This factor weighs heavily in favor of granting final approval. This Court recently held that "there is a presumption in its favor [settlement] so long as parties engaged in arms-length negotiations after meaningful discovery." *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d at 244-45. As explained above, this Settlement was only achieved after informed, non-collusive, arm's length negotiations, including a formal mediation. Given the standard articulated by this Court in *In re Ranbaxy*, the Settlement negotiated by the Parties is entitled to a presumption by the Court that it is a favorable resolution. Given the above, this factor weighs strongly in favor of approval of the Settlement.

## VI. NOTICE SATISFIED DUE PROCESS AND RULE 23

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of applicable law and due process. Doc. No. 54, ¶¶ 12, 13. That plan has now been fully carried out by Settlement Administrator, Kroll. *See generally* Kroll Decl. As outlined in detail in Kroll's supporting declaration, the Notice Plan and its execution satisfied all the requirements of Rule 23(c).

To satisfy due process, notice to class members must be the best practicable method and reasonably calculated under all the circumstances to apprise interested parties of the pendency of

the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). Notice may be provided by U.S. mail, electronic mail, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B).

Direct mail notice, utilized here, is the gold standard and is consistent with notice programs approved by other courts. *See, e.g.*, *Stott v. Capital Financial Services*, 277 F.R.D. 316, 342 (N.D. Tex. 2011) (approving notice sent to all class members by first class mail). In *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016), the Sixth Circuit found that the notice and claims processes satisfied Rule 23 where 90.8% of notices were successfully delivered to addresses associated with class members.

The Notice plan here meets this standard. Second, in an effort to ensure that Short Notices would be deliverable to Settlement Class Members, Kroll ran the Class List through the NCOA database and updated the Class List with current addresses. *Id.* ¶ 5. After an initial mailing and a remailing of postcards returned undeliverable, Kroll estimates the direct mail notice reached 94.65% of the Settlement Class. *Id.* ¶ 13. This reach rate is consistent with other court-approved, notice programs and FJC Guidelines, which state that a notice plan that reaches[4] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[5] *Id.*

The Notices (both the Postcard Notice sent to Settlement Class Members and the Long Notice available on the Settlement Website) advised Settlement Class Members of their rights to submit a claim, request exclusion from the settlement, object to the settlement, or do nothing, and

[4] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

[5] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d ed. 2010).

the implications of each such action. *See* Kroll Decl. Exs. C, D. The Notices advised Settlement Class Members of applicable deadlines and events, and how Settlement Class Members could obtain additional information. *Id*. The Notices adequately informed Settlement Class Members of the nature of the action, the definition of the Class, the claims at issue, and the binding effect of final approval and class judgment. The Notices utilized clear and concise language that is easy to understand and was organized in a way that allowed Settlement Class Members to find any section that they may be looking for. Thus, the Notices were substantively adequate. *See Espinosa v. United Student Aid Funds, Inc*., 553 F.3d 1193, 1202 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) ("The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'"). In addition, Kroll issued a press release, designated a post office box, established a toll-free telephone number, and set up a Settlement Website. Kroll Decl. ¶¶ 6-8, 10.

Notice here was robust, effective, and met all due process requirements, as well as the requirements of Rule 23(c). This weighs in favor of final approval as well.

## VII. CERTIFICATION OF THE SETTLEMENT CLASS

In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class, finding that the Class satisfies all Rule 23 requirements. Doc. No. 54, ¶ 1. Nothing has changed since that finding that could conceivably undermine class certification. Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class for Settlement purposes.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed order granting final approval of the Settlement.

Dated: May 26, 2026

Respectfully submitted,

*/s/ David K. Lietz*

David K. Lietz*
**MILBERG PLLC**
5335 Wisconsin Ave., NW, Suite 440
Washington, DC 20015
Tel: 866.252.0878
dlietz@milberg.com

Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

Danielle L. Perry*
**MASON LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
dperry@masonllp.com

*Interim Co-Lead Counsel for Plaintiffs*
**Pro hac vice*